ROGERS, J.
 

 Plaintiff sued for the value and loss of the use of six mules and one horse, alleging that the animals were killed through the negligence of the employees of the defendant railroad company. His claim for the loss of the use of his stock was rejected by the court below on an exception of no cause of action. The defense of the railroad company to the other item of plaintiff’s demand is that its track and right of way near the point where the animals were struck were protected by a fence in good condition; that the animals reached the railroad track through a gate likewise in good condition built in the fence across a private way erected and maintained for the use of plaintiff and other persons residing in the neighborhood; that the gate was opened and left open without the knowledge of the defendant or any of its employees ; and that, due to the existence of a thick fog which hung over the track, its engineer, who was at his place in the cab of the locomotive, was unable to see the animals that were killed until he had reached a point not over 30 feet distant, and was therefore powerless to stop the train and avoid the accident.
 

 The court below rendered judgment in favor of plaintiff for the value of his stock, and defendant has appealed. The plaintiff has answered the appeal, praying the judgment be increased in the sum of the alleged value of the earning power of the animals.
 

 The court-below did not err in maintaining the exception of no cause of action. Six of the animals were killed outright and the seventh was so badly injured that it was necessary to kill it on the spot. Therefore the alleged acts of negligence which caused the immediate death of plaintiff’s stock were immediately ascertainable and plaintiff’s right for the recovery of their value accrued instanter. The rule of law applicable to the case is stated in 17 O. J. § 185, p. 879, as follows, viz.:
 

 “The value of the animal at the time is the measure of damages where it is killed, or so injured that killing is made necessary.”
 

 The case of Jones v. Texas & Pacific R. Co., 125 La. 542, 51 So. 582, 136 Am. St. Rep. 339, is not directly in point. There the animal, for the loss of the services of which the owner was permitted to recover, died several months after it was struck by the train of the defendant railroad company. The court held that while the death of the animal resulted from the accident, nevertheless, the plaintiff’s damage was not sustained, as a matter of
 
 *721
 
 law, until that moment, because of the fact of its having been sustained was not until then susceptible of ascertainment. Up to that time the damage was, at best, uncertain, contingent, and speculative. It only became certain and actionable when the injured animal died.
 

 The accident in which plaintiff’s stock was killed occurred at 3:45 o’clock on the morning of June 24, 1923, at a point known as “Chamber’s Spur” on the line of the defendant railroad company. At that point there is a road crossing established at the request of the manager of the Oakland plantation, to serve the interest of the plantation, which lies on both sides of the defendant’s property. The railroad track and right of way are inclosed by fences erected by the railroad company, and the private road crossing was protected by gates (so-called), since removed, on the north and south sides of the company’s property. These gates were nothing more than 2x4 frames, each braced by a 1x4, with barbed wire stretched across the frames, and fastened to the fence posts by strap hinges. Each gate when closed was secured merely by a loop of barbed wire placed over the fence post and on the extension (about 4 inches) of the crossbar on the gate. The 1x4 brace on the south gate had warped to such an extent that it would not close at the bottom at all, and the slightest pressure applied to the gate would cause the wire to fly off the top and the gate to open.
 

 Near the south gate and adjacent to the road leading .to the private road crossing, the plaintiff, who was engaged in logging operations, had constructed a corral in which to confine his stock. The evidence shows that at 6:30 o’clock on the evening of the day preceding the accident the gate to the corral was securely fastened by one of plaintiff’s employees, who tied it with wire both at the top and bottom, and making it hog proof, since there were hogs as well as stock within the inelosure. The evidence also shows that the gate leading to the railroad track was closed at 10:30 o’clock on the night preceding the accident. After the animals were killed an examination disclosed that they had forced themselves through the gate of plaintiff’s corral by breaking the wire fastening at the top and shoving the gate over, the fastening at the bottom remaining intact. It is not shown how they got through the gate to the railroad right of way. This, however, was not a difficult thing to do, since all that was necessary to cause the gate to open was for one of the animals to push or brush against it. While the animals were on the track and right of way of the railroad company they were struck and killed by one of its passenger trains running at a speed of 45 miles an hour.
 

 The railroad company was under no obligation to fence its right of way, and therefore its failure to properly construct or to keep the fences and gates in repair was not negligence per se. The only penalty imposed upon it for not doing so is that it assumes the burden of proving that injuries to stock upon its track are not caused by its negligence. Acts Nos. 70 and 110 of 1886; Sanders v. Railroad Co., 127 La. 917, 54 So. 147.
 

 The public policy of the state as expressed in Act 70 of 1886 is that railroad companies shall pay for live' stock killed or injured by the operation of their trains, unless they shall allege and prove that the killing or injury was without negligence on their part. State v. Foster, 106 La. 425, 31 So. 57. Since the adoption of the statute, the onus of proof in such actions is shifted from the owner of the stock to the defendant railroad company, which must sustain the material grounds raised in defense. Mire v. Y. & M. V. R. Co., 105 La. 462, 29 So. 935.
 

 The main ground of defense here is that, due to the prevalence of a dense fog, the engineer in charge of the train was unable to discover the position and peril of plaintiff’s
 
 *723
 
 •stock until it was too late to stop the train and avoid the accident. Under the law hereinabove referred to; it was incumbent upon the defendant company to establish its defense by a preponderance of the ■ evidence.' We do not think it has done this. It is true the train crew and the section foreman testified to the density of the fog, and that the fog zone extended from Boyde, a town 15 miles west of the city of Alexandria, to Addis, a station 119 miles east of Boyce; Chamber’s Spur, where the accident occurred, is situated about 11 miles east of Alexandria. One of the ■witnesses, the fireman on the locomotive, went so far as to declare that: “It was as foggy at that particular moment as. I ever seen it in Louisiana.” In this connection it is to be observed, that the accident occurred in the summer and not in the winter, which is particularly the season for fogs. Moreover, the testimony of defendant’s witnesses as to the existence <5f the fog was flatly contradicted by plaintiff and his witnesses, nearly all of whom are apparently disinterested, who testified that there was no fog and that the morning was clear.
 

 Again, the engineer of the defendant company testified that as far as he could see the stock appeared to .be huddled together when they were struck by the train. His fireman testified to the same effect. The engineer further testified that he had just given the signal for the private crossing when the stock appeared and then he applied the brakes. Therefore he, admittedly, saw the animals before reaching the crossing. The physical facts shown on the trial of the case indicate that the animals were struck separately while running down the track to escape the train, and not while bunched together; that the first animal was struck at a point approximately 600 feet from the private crossing, ■and that the other animals were struck one ;at a time at distances of from 50 to 75 feet • apart; the distance from where the first animal was struck to where the last animal was struck being approximately 450 feet. Three of the animals were struck with such force that they were thrown clear over the right of way fence at different points. The carcass of one mule or parts of the carcasses of two mules was lodged under the front truck of the baggage car and dragged to the point where the train was brought to a stop near a crossing over the public highway, which lies approximately a distance of a half of a mile from the private crossing established by the railroad company for the use of the Oakland plantation.
 

 Under all the circumstances of this case, and in view of the burden resting upon the defendant, under the law, to clearly show the absence of negligence on its part, we are unable to find any reasonable ground upon which to disturb the judgment of the court below.
 

 For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.
 

 O’NIELL, O. J., takes no part.