No. 3568

No. 3550

Second Circuit

(Second Division)

---

MARSTON v. LOUISIANA R. & N. CO.
LOFTIN v. LOUISIANA R. & N. CO.

---

(June 11, 1931. Opinion and Decree.)

---

Smitherman, Tucker & Mason, of Shreveport, attorneys for plaintiffs, appellees.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

STEPHENS, J. Plaintiff, estate of B. W. Marston, sues to recover $900, the alleged value of four mules; and plaintiff William I. Loftin sues to recover $170, the alleged value of a yearling and a mare saddle horse; all of which were killed by defendant's train No. 1, operating as a passenger and express train between Shreveport, La., and New Orleans, La. The accident occurred near Ninock station in Bossier parish, La., at about 8 o'clock p. m. on November 12, 1925. The plaintiffs instituted ·separate actions in the First District Court of Caddo .parish, La., but by agreement of counsel for all parties, consolidated them for trial.

The plaintiffs allege in their respective petitions that the killing of the live stock was due to the negligence and carelessness of the agents, employees, and servants of the defendant; and that at the point where the animals were killed, the right of way of the defendant railroad company was not fenced, and in consequence thereof live stock passed freely and unrestrained over the tracks of the defendant.

The defendant answered, admitting the killing of the stock and the unfenced condition of the track at the point where the accident occurred; and alleged as a defense that at the time and place of the accident there was a very heavy fog prevailing; and that although the engine of the defendant was equipped with a modern electric headlight in good order, and burning, it was impossible for such light to penetrate the fog for a distance greater than sixty or seventy feet; and that there is not known to railroad service any light which would penetrate a fog of such density as existed at the time, for a greater distance.

The district judge rendered judgment in favor of plaintiff estate of B. W. Marston for the sum of $500, with legal interest from judicial demand; and in favor of the plaintiff William I. Loftin in the sum of $168, with like interest. The defendant prosecutes this appeal from the two judgments.

Mr. Carter, the engineer, testified that he was running his train at a speed of approximately forty-five miles per hour, and keeping a proper lookout ahead; and that a short distance from where he entered the straight track at Ninock station, some mules suddenly appeared within his range of vision, the depth of which he estimated to be about sixty or seventy feet. The mules, he stated, were in the middle of the track in a huddle, or network,. apparently trying to run over each other; that upon seeing the mules he commenced sounding the stock whistle, and applied the emergency brakes, and brought the train to a stop within its length, which he estimated to be two hundred twenty feet. He further testified that he saw no other stock either prior or subsequent to the time he saw the bunch of mules in the middle of the track. With reference to what occurred immediately after the train was brought to a stop, he testified as follows:

"Q. What happened after the train stopped?
"A. I got ·off the engine, started back, got off the engine looked under to see if anything under the engine, didn't find anything, started back to the train, in the meantime I seen the flagman on the rear pull mule out from under the sleeper I returned to the engine found nothing wrong with the engine. * * *
"Q. You were around your train during the entire period?
"A. I was there looking the engine over."

On cross-examination the engineer testified that his engine was six or eight hundred feet below Ninock station when he first saw the mules huddled together on the track. The plaintiff Loftin testified

that he measured the distance from Ninock station to where his yearling was killed, and found it to be seven hundred fifty feet; and that, it was four hundred and twenty feet from that point to the place where his horse was killed; and from where his horse was killed to where the first mule was killed it was ninety feet; and from that point to the place where the fourth mule was killed was about two hundred and ten feet.

Both the engineer and his fireman admit that they never saw the yearling or the horse, but account for their death by the possibility of their running into the side of the train. The horse was cut in two, and one-half of her ground in pieces. She evidently was not killed by running into the side of the train. She was undoubtedly struck while on the track, and should have been seen by the engineer and fireman even if the fog was as heavy as they say it was. It is possible that the yearling was killed by running into the train, but it is probable, in view of the fact that the horse was not seen, though on the track, that the yearling was killed in the usual manner.

The engineer testified that he first saw the mules and commenced sounding the stock whistle at a point about six or eight hundred feet below Ninock station. He is contradicted in his statement by Quarles, witness for plaintiff, who testified positively that the stock alarm was sounded in front of his house, which is at Ninock station. The engineer's testimony is corroborated by his fireman's but Quarles is supported by one Hankins. It is difficult to determine one's position at a given time on an engine moving at forty-five miles per hour, but one could not be mistaken as to whether a whistle was first blown immediately in front of his door, or six

hundred or eight hundred feet therefrom. We must assume that the testimony of Quarles is correct on this point; and it follows that some of the animals were seen at a point at least six or seven hundred feet before the yearling was struck; and that after knowledge of the presence of the animals on the track the engineer ran the train a distance of eleven hundred feet before the horse was killed; about twelve hundred feet before the first mule was killed; and about fourteen hundred and ten feet to the point where the last mule was killed.

That it was foggy on the night in question is not disputed, but we agree with the conclusion that the trial court must have reached, that the heaviness or density of the fog was greatly exaggerated by the defendant's witnesses. This is indicated by the sounding of the stock whistle at a much greater distance from the point where the killing began than sixty or seventy feet, as testified to by the engineer and the fireman; the testimony of plaintiffs' witnesses that they saw a red light on the rear of the train, notwithstanding the fog, at a distance not less than a quarter of a mile; and the testimony of the engineer, quoted above, that he saw the flagman pull a mule from under the rear pullman, though he clearly indicated in his testimony that he never left the immediate vicinity of his engine.

As the engineer testified that he stopped his train within an estimated distance of two hundred and twenty feet after having applied the brakes, we are of the opinion that he did discover, or should have discovered, in the exercise of ordinary care, under the circumstances, the position of peril of the animals in time to stop and avoid killing them.

The case presents only questions of fact,

and we find no apparent error in the conclusion of the trial court that the defendant has failed to establish, by a preponderance of the evidence, its freedom from negligence in the killing of the stock. The damages as fixed by the trial judge seem fair and reasonable, and in accord with the testimony adduced.

The judgments appealed from are affirmed.