## PENDLETON v. MISSOURI PAC. R. CO. et al.

### No. 4484.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 6, 1933.

Polk & Robinson, of Alexandria, for appellant.

Hawthorn, Stafford & Pitts and Peterman, Dear & Peterman, all of Alexandria, for appellees.

DREW, J.

The pleadings, the facts, and the law applicable to this case are set out in the following well-written opinion of the Judge below:

"Plaintiff brought this suit against the Missouri Pacific Railway Company and the Texas & Pacific Railway Company and prays for judgment against the two defendants jointly, individually and in solido in the sum of $650.00 with legal interest from judicial demand until paid, as damages for the loss of five head of mules alleged to have been killed on the night or early morning of December 11–12, 1931, by a train operated over the tracks of the Texas & Pacific Railroad Company at a point just south of Willow Glen in Rapides Parish and at or near where said tracks cross Bayou Roberts.

"It is alleged that the Missouri Pacific Railway Company (which for brevity will hereafter be designated as MOP Ry. Co.) operates its trains over the track of the Texas & Pacific Railway Company (hereafter referred to as T&P Ry. Co.) in and through Rapides Parish with the consent of said T&P Ry. Co., under a contract of lease granting the privilege to use said tracks, and alleges from information and belief that it was a train owned and operated by the MOP Ry. Co., which struck and killed said mules.

"It is also alleged that said railroad tracks were not fenced and had no proper cattle guards at the time at and near where the mules were killed, and that the tracks are straight for some distance in each direction from said point of the killing.

"Defendants admit in answer filed that the tracks are straight as alleged but deny that same were not fenced. The proof, however, shows that the tracks were not fenced along one side of the right-of-way for some distance near the point of accident and that there was no cattle guard at a certain railroad crossing in close proximity to said point.

"Defendants made no serious contention upon the trial of the case that the track was properly fenced or that a cattle guard was being kept up at the crossing, but set up the defense of want of negligence averring in answer:

" 'That at the time said mules were killed by its passenger train, the members of its train crew were keeping a vigilant and proper lookout for stock * * * but that on account of fog and mist at the time, the members of its train crew were unable to observe the said mules on the track ahead of the train until the locomotive was within three hundred or four hundred feet of the said mules; that when the said animals were first observed by respondent's engineer and fireman, the brakes were immediately applied, the bell rung and the whistle blown, but due to the short distance it was impossible to stop the train before striking the said animals. That the said accident was entirely unavoidable, respondent's train crew not being in any manner negligent. * * *'

"As has been well established by decisions of the Supreme Court and Courts of Appeal, in cases of this character, where railroad companies do not have their tracks fenced and/or do not maintain suitable cattle guards, the only penalty imposed upon such railroad companies for not doing so is that the burden of proof is upon them to prove that injuries to stock upon their tracks are not caused by negligence in operation of their trains. Jackson v. Texas & Pac. Ry. Co., 166 La. 718, 117 So. 805; Marston Estate v. La. Ry. & Nav. Co., 16 La. App. 610, 135 So. 113.

"The testimony of defendant, MOP Ry. Co.'s engineer, Harry Morgan, who was operating the train which killed plaintiff's mules, is that his train was a fast passenger; that the maximum speed allowed on that run at that time was 35 miles per hour; that when he first saw the mules he was running between 40 and 50 miles per hour and the mules were in the neighborhood of 400' feet on the track ahead of him; that 'the weather was foggy and misty in streaks * * * not exactly raining * * * it was a mist, a fine mist.' He gives that as a reason why he did not see the stock sooner. He states the headlights of the train were burning properly at the time and that owing to these weather conditions he could not see the stock sooner than he did; that at the rate he was going he could not stop in less distance than 1000 feet; that he promptly applied the emergency brakes, which were in good condition, stopped within about 1000 feet but was unable to stop in time to avoid striking the mules.

"B. H. Campbell, the fireman, testified substantially to the same state of facts as did the engineer. He states he was keeping a watch out from his side of the engine cab, saw the mules about 300 feet ahead, run upon the track from his side and run down the track; that he immediately yelled to the engineer and informed him of the stock. Asked what prevented him from seeing them sooner, he said: 'Fog; fog and misty weather.' Said, 'It wasn't a dense fog; it was a streaky fog.' He corroborates the engineer as to the speed of the train, time it takes to stop and the im-

possibility to stop in time to avoid the accident, effort to stop, etc.

"W. A. Rongey, section foreman, testifying for defendant, stated he lived about three miles from the point of the accident, and came to the place about nine o'clock next morning; that the weather had cleared up a little and that there was a fog and misting rain that night; that the ground was wet when he buried the mules that morning.

"As against this testimony, plaintiff placed upon the stand four colored witnesses, Henry Wimbush, William Lewis, Easter Lewis and Richard Thomas. Wimbush testified that his house was about 250 yards from the railroad track and about three-quarters of a mile back to the west or north from the point where the mules were struck. He states that when the train passed opposite his house he saw the lights in the coaches and that the weather was not foggy but was clear.

"William Lewis and his wife, Easter Lewis, testified that their house was situated about thirty yards from the track within about fifty yards from where the stock were killed; that the train stopped, and they saw search lights which the train crew used in looking for the carcasses of the stock, also heard them talking; and that the weather was clear and not foggy nor misty. These two witnesses were in bed asleep and the train woke them; they came out on their porch for a few minutes only and returned to their rooms.

"Richard Thomas testified he lived about a half mile from where the mules were killed. He did not see the train nor know about the accident until next morning. He says he got up at 4 o'clock that morning, and that it was not foggy at that time; says there was just a little shower of rain however just passed over. In his written statement to the company's adjuster, filed in evidence, taken in March, 1932, this witness says it was misting rain when he got up at four o'clock the morning of the accident. Says he did not remember about the fog.

"Taking as a whole the testimony of the witnesses for both sides, the Court thinks the defendant, MOP Ry. Co., owner and operator of the train which killed the stock, and which would be primarily liable if either of the defendant companies is, has discharged the burden resting upon it of proving by a preponderance of the evidence the lack of any negligence upon its part as to the cause of the accident. The testimony of the engineer and fireman is clear and positive on all points touching the condition of the train, rate of speed, seeing the stock, and their efforts and inability to avoid the accident. The demeanor of these two witnesses upon the stand and their manner of testifying was such as to convince the court that they were telling the truth on all points, and especially as to those above regarding the train and its operation, and as to the condition of the weather

which as they stated prevented them from seeing the stock in time to avoid striking them. Their testimony as to the weather is in some respects corroborated by the section foreman, also by Richard Thomas, to the effect that the weather generally was damp, showery and misty at four o'clock and later up in the morning.

"The Court does not think the statements of William Lewis and his wife that the weather was clear and not foggy are sufficient to offset that of the engineer and fireman, corroborated by the section foreman and Richard Thomas as to the general wet conditions of the weather, even though Thomas states that it was not foggy. Lewis and his wife were up but a few minutes, did not go out except upon their front porch, then returned to their beds; hence cannot be said to have been in as good position to observe the weather as were the engineer and fireman who were out in the weather all the while.

"Aside from that the engineer and fireman both state the mist and/or the fog were in streaks and it can well be said that fog or mist could exist at one point and be non-existent at another, just as testified to by them. Henry Wimbush could have observed the lights in the coaches at a point where there was a break in the fog or mist, from where he was living three-quarters of a mile back away from the point of the accident. His testimony could be of little or no weight on this point.

"It is evident that the weather conditions prevented the engineer and fireman from seeing the stock sooner than they did and in time to avoid striking them. It is equally clear that everything possible was done to avoid the accident. Therefore, it is the opinion of the Court that defendant is not liable; and plaintiff's demands will be rejected."

We find no manifest error in the finding of fact and there is no dispute as to the law applicable thereto.

The appellant contends that the lower court failed to require the defendants to carry the burden of proving they were free from negligence, but a careful reading of the opinion shows to the contrary. The lower judge not only found the facts, but gave his reasons for accepting the testimony of certain witnesses over that of other witnesses, and specifically stated that the defendants had discharged the burden resting upon them of proving by a preponderance of the evidence the lack of any negligence on their part. Where the decision rests upon the finding of fact and we do not find any manifest error therein, this court will not disturb the judgment of the lower court.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs.