SMITH v. THOMPSON.
No. 5761.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 9, 1938.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellant.

Cameron C. Minard, of Columbia, for appellee.

HAMITER, Judge.

A passenger train operated by employees of defendant struck and killed two mules belonging to plaintiff during the night of October 24, 1937, and the latter seeks in this proceeding to recover their value. The property loss occurred on defendant's right of way in open country at a point in Caldwell Parish, Louisiana, known as Ouachita Spur, which is a short distance south of the town of Riverton. Defendant denies responsibility for their death, and particularly asserts that no negligence attended the train's operation at the time of the striking of the animals.

There was judgment in favor of plaintiff for $250 and defendant perfected this appeal.

The evidence discloses that at and near the scene of the accident, defendant's right of way is enclosed by fences and runs generally in a north and south direction. A public road crosses it about 100 feet north of Ouachita Spur. Cattle guards are employed at this crossing instead of gates. Entrance to the right of way was gained by the mules through an opening in the fence at the south end of the west cattle guard. This opening was caused by the falling of a fence post.

There is no responsibility "on the part of railroad companies for the killing or injury of stock where said railroad companies have their line of track fenced in and kept in good order, and have erected and maintained, in good order, suitable cattle guards at crossings". Section 3, Act No. 110 of 1886. However, there is no obligation on the part of railroad companies to fence their rights of way and their failure to construct and maintain fences in good condition is not negligence per se. Sanders v. Illinois Central Ry. Co., 127 La. 917, 54 So. 147; Jackson v. Texas & Pacific Ry. Co., 166 La. 718, 117 So. 805; Davis v. Louisiana Ry. & Nav. Co., 13 La.App. 148, 127 So. 441. But where fences in good repair are not so maintained, the railroad companies, in suits for the loss of stock killed or injured by them, carry the burden of proving that "the killing or injury was not the result of fault or carelessness on their part or the negligent or indifferent running or management of their locomotive or train." Section 1 of Act No. 70 of 1886.

As the mules in the instant case entered the right of way because of the defective condition of the fence, it is encumbent on defendant to prove freedom from fault in killing them. This is conceded by defense counsel for in their brief they state: "The trial judge correctly held on the second page of his written opinion that the burden of proof was upon the railroad company to show 'that its train was not carelessly and negligently operated and all was done to avoid killing the stock that was possible.'"

The train that killed the animals was a regular scheduled through passenger and was making a northbound run. It crossed the Ouachita river bridge at 25 miles per hour and thereafter its speed was accelerated. About a mile north of such bridge, it entered a severe or sharp right curve and proceeded therein at from 45 to 50 miles per hour. Just before reaching the north end of this curve, which is approximately one-half mile long, the mules were struck.

The only eye witnesses to the event were the engineer and fireman of the train's locomotive. The former had been in railroad service for 43 years, and was for 34 years a locomotive engineer. The latter

was also an engineer by occupation, but on the night in question he was acting as fire-man. His railroad service dates back 28 years.

According to the testimony of the mentioned employees, the headlight on the engine was burning brightly. The ray of the light, however, was cast somewhat to the left while rounding the curve, with the result that the track was not illuminated nearly so far ahead as when a straight course is followed. Both operators were in their respective positions in the cab and were maintaining lookouts. The engineer saw the animals as soon as the light shone on them. They were then about three pole lengths, or 530 feet, away. It is stated by the engineer, and his testimony is corro-borated by that of the fireman, that, "I immediately grabbed the whistle, started the bell to ringing, kicked the cylinder cocks to open the valves and put on the brakes. I made 20 pound application to the air which is full application." He explains that when the valves are opened steam es-capes from the pump cylinder and creates a noise. The stop sought to be accomplished was the only proper and feasible one to attempt under the circumstances. A dis-tance of about 1,450 feet is required for this stop while traveling at the mentioned speed. An emergency application was pos-sible, but such would have endangered the lives of the passengers and the train crew, and also the railroad equipment.

The mules ran ahead of the engine, one being on each side of the track, and after proceeding three or four hundred feet the one on the left side jumped between the rails. The latter was then hit, the train at the time traveling about 25 miles per hour and the brakes being still applied, and thrown by the pilot of the engine onto the other. Both "rolled up there like a couple of football players", and death resulted to them.

The above detailed facts disclose, as we view them, no negligence on the part of the train operators. They did every-thing within their power, consistent with safety, to prevent the striking of the ani-mals. This conclusion seems to be in ac-cord with that of the trial judge, for in his written reasons for judgment he states: "We think that the defendant has shown that its employees discharged this duty in-sofar as they were able under the circum-stances and speed of the train".

The district judge, however, was of the opinion that the maintenance of the fences in the locality of the curve provides a "trap for killing stock that made an en-trance into the right of way", and that the stock "are held between the two fences and when they graze in the vicinity of the Ouachita Spur they are so near the sharp curve in the track that trains moving fast from the south are so close on the stock by the time the engineer is able to ascertain their presence it is impossible for the train to be stopped;" and because of this situa-tion he decreed liability on the part of the defendant. He states that the trap can be eliminated in only two ways, viz.: (1) the removal of the fences so as not to restrain the stock within a narrow territory, or (2) the restricting of the train's speed to 25 miles per hour around the curve, thus per-mitting a stop to be made before the ani-mals are struck. The reasons for liability expressed by the district court are, in our opinion, not in accord with the established law of this state bearing on the subject. The aforementioned provisions of Act No. 110 of 1886 encourages railroads to ade-quately and properly fence their rights of way, which are their private property, by offering freedom from responsibility for the killing of stock thereon when so fenced. If advantage is not taken of those statutory provisions the presumption of liability un-der said Act No. 70 of 1886 is imposed and attaches.

Then, too, our law places no re-striction on the speed employed by trains in the open country, outside of city limits. In localities of that character they may be operated at any speed that is consistent with their safety. Davis v. Alexandria & W. R. Co., 152 La. 898, 94 So. 436; Jeter v. Texas & Pacific Ry. Co., La.App., 149 So. 144; Campbell & Co. v. Texas & Pa-cific Ry. Co., La.App., 152 So. 351.

The existence of the curve in the instant case, insofar as the question of lia-bility under consideration is concerned, constituted no reason for speed reduction. We said in the case of Boyd v. Kansas City, S. & G. R. Co., 147 So. 100, 101, that, "The train of defendant company was be-ing operated on its private property. To require a train, being operated in open country, to operate at such a speed as to permit its being stopped within the distance an object may be seen on the track when coming out of a curve, would seriously in-

**74**

terfere with train schedules in which the public is as much interested as is the railroad company."

It is well recognized that fog and rain prevent a locomotive's operators from having good visibility of the tracks ahead, just as does the presence of a curve when the train is traveling at night; yet the courts have held on several occasions that a railroad company is not required to slow its train during rainy or foggy weather. Foster v. Texas & Pacific Ry. Co., 5 La. App. 601; Jeter v. Texas & Pacific Ry. Co., and Campbell & Co. v. Texas & Pacific Ry. Co., both supra.

In view of the facts stated above and the discussed jurisprudence and provisions of law, we hold that the burden of proof imposed on defendant herein has been met.

Therefore, the judgment of the district court is reversed and set aside, and there is now judgment rejecting plaintiff's demands and dismissing his suit at his cost.