HAMITER, Justice.
 

 Plaintiff, a copartnership composed of the heirs of Mrs. C. Friedman, seeks to recover m this suit the sum of $520, the value of its five brood mares and one colt which were struck and killed by defendant’s fast passenger train during a run between Fort Worth, Texas, and New Orleans, Louisiana.
 

 Judgment in plaintiff’s favor for the named amount was rendered by the district court. On appeal to the Court of Appeal, it was set aside and the suit dismissed. 24 So.2d 167. The cause is before us on a writ of review or certiorari.
 

 As is pointed out in the briefs of counsel, the facts of the - controversy are undisputed. The accident occurred about ■ 12:55 o’clock of the morning of October 10, 1941; on defendant’s’ bridge or trestle located in open country- about one mile 'west of-Cypress, Louisiana. This trestle, which spans a deep bayou, is 202 feet in length and runs in an easterly and westerly direction. Its west 85 feet and east 75 feet are decked or floored with 3x6 timbers and with gravel; the middle 42 feet is unfloored, consisting merely of the rails and
 
 *543
 
 the bare cross ties spaced eight inches apart, and is the same as a regular railroad trestle. To the west of the bridge, beginning 525 feet from its west end, the railroad track experiences a rather sharp curve.
 

 The train that struck the animals consisted of an engine, a water car, a baggage car, and six heavy coaches. All of its equipment was in good condition and complied with standard requirements. Just prior to the accident it was traveling toward the east between 60 and 65 miles an hour, at which speed a distance of from 2000 to 2500 feet is required for stopping. The engineer and the fireman were at their proper places of duty in the cab and were looking ahead.
 

 The engineer first noticed the animals, which were on the western floored portion of the trestle, when only 600 feet away and as he was nearing the end of the above described curve. They could not have been observed sooner because the curve in the track forced the beam from the locomotive’s headlight away from the bridge. Immediately upon seeing the stock he applied the brakes, knowing at the moment that a stop could not be timely made; also, he opened the cylinder cocks, thereby letting out steam. The whistle was not blown, the engineer’s explanation for this omission being: “The horses were out on the deck of the bridge, and a little span on this bridge is not decked, and blowing the whistle, if it had excited them, and made- them move, they would either come back meeting the .train,' or if they went back the other way, away from the train, their feet and legs would have got in the open spaces between the ties, and they would have been caught in there.”
 

 The situation was a dangerous one, so the engineer said; accidents of that kind had occurred previously, to his knowledge, resulting in the derailment of the engine and the loss of life to those operating it. He further testified that the horses, as the train approached, “just began scrambling, wiggling around among themselves, out on the deck, on the floored part of the bridge.”
 

 In the immediate vicinity of the trestle in question the plaintiff partnership owns and operates a plantation of several thousand acres of land. Because of defective fences surrounding that property, the animals had strayed therefrom to defendant’s unfenced right-of-way and then to the decked portion of the bridge where they were killed.
 

 Railroad companies are under no obligation to enclose their rights-of-way; hence, their failure to construct and maintain fences in good condition is not negligence per se. Sanders v. Illinois Central Railroad Company, 127 La. 917, 54 So. 147; Jackson v. Texas & Pacific Railway Co., 166 La. 718, 117 So. 805; Davis v. Louisiana Railway & Navigation Co., 13 La.App. 148, 127 So. 441. Where, however, fences are not so constructed and maintained in good repair, such companies, in damage suits for loss of stock struck by their trains, carry the burden of proving that “the killing or injury was not the result of fault or carelessness on their part or the
 
 *545
 
 negligent or indifferent running or management of their locomotive or train.” Section 1 of Act 70 of 1886.
 

 In its effort to discharge the burden of proof that it carries in the instant case, since its right-of-way was unfenced, defendant showed that the equipment of the offending train was in good condition; that the engineer and fireman were maintaining the required lookout; and that everything possible commensurate with safety to the passengers was done to avoid the accident after the discovery of the horses.
 

 With reference to its maintaining a trestle of the kind and type involved here, defendant correctly takes the position that it has violated no statute imposing restrictions on railroad companies in the erection and maintaining of structures on their rights-of-way.
 

 Further, with reference to the trestle, it asserts that there was no violation on its part of a legal obligation under the general law of negligence. In connection with this assertion, defense counsel state that, “the owner of private grounds is under no obligation to keep them in a safe condition for straying animals,” and they cite several cases from Louisiana and from common law states which involved actions for damages for the killing or injuring of straying animals. The unqualified general statement thus made seems to be supported by the broad language of some, although not all, of the cited common law authorities; but it is not sustained by any of the cited Louisiana cases.
 

 Continuing, counsel in their brief say that, “The courts have declared that both young children and animals are irresponsible creatures. The rule that applies to one will apply to the other Cases which deal with the owner’s liability to children of tender years for defects in premises are therefore pertinent here because any principle that is laid down as to them is also applicable to any other irresponsible creature.” Then, in support of their argument that no liability is imposed upon a defendant for injuries suffered by irresponsible creatures (both children and animals) that go upon the former’s premises without solicitation, counsel rely on and quote extracts from the cases of Spizale v. Louisiana Railway & Navigation Co., 128 La. 187, 54 So. 714; Hendricks v. Kansas City Southern Railway Company, 142 La. 499, 77 So. 130; Fincher v. Chicago, R. I. & P, Railroad Co., 143 La. 164, 78 So. 433; Tomlinson v. Vicksburg S. & P. Railway Co., 143 La. 641, 79 So. 174; Peters v. Pearce, 146 La. 902, 84 So. 198; and Buchanan v. Chicago, R. I.
 
 &
 
 P. Railroad Co., 9 La.App. 424, 119 So. 703, all of these being actions in damages for injuries to or deaths of children of tender age which resulted from dangerous agencies on the premises of defendants.
 

 Assuming, as suggested, that both children of tender years and domestic animals are considered in law as irresponsible creatures (this assumption, we think, is justified), we are of the opinion that the authorities relied on by defense counsel are distinguishable from, and therefore not de
 
 *547
 
 cisive of, this controversy. The important distinction is found in the fact that in none of those cases did circumstances exist which were sufficient to charge the defendant with knowing, or that it reasonably should have known, of the probable presence of the irresponsible creatures (children) at the location of the dangerous instrumentality or structure. Here, however, defendant was charged with the knowledge, or it reasonably should have known, that domestic animals would very probably be present at the place of the accident’s occurrence, for Louisiana has no stock law, and horses, mules and cattle, as is commonly known, graze on and near the railroad rights-of-way in the open country throughout the state.
 

 Notwithstanding this knowledge with which it is chargeable, defendant maintained at a point one mile west of Cypress, Louisiana, what may be termed a dangerous instrumentality — something in the nature of a trap — by which grazing stock might be injured or killed. Of course, the partially floored or decked trestle of itself or alone was not dangerous; without a train moving over it no harm could result. But a combination of factors, namely, defendant’s fast passenger train proceeding on to the bridge after negotiating a sharp curve only 525 feet away at a speed of 60 to 65 miles per hour, created a situation whereby death or injury to stock then on the decked portion was inevitable. On the train’s fast approach, the animals could not return to the regular road bed and get off the track, nor proceed across the trestle (the center portion of which was unfloored), nor jump from the bridge to the water, a great distance below.
 

 Why these animals wandered to the floored trestle is not known; however, their doing
 
 that
 
 would
 
 not seem
 
 unusual. Perhaps they were seeking a grazing place on the right-of-way farther to the east, or that the spot above the water was cooler, or that insects were less bothersome there. But the fact remains that they were actually on the bridge, trapped in a place where escape from death was impossible. Had the partial flooring of the trestle not existed, and had they been only on the regular road bed, an opportunity for avoiding being struck, after hearing the noise made by the approaching locomotive, would have been theirs.
 

 That it is important in the application of the attractive nuisance doctrine that a defendant be chargeable with knowledge of the probable presence of irresponsible creatures is made clear by an extract from' 38 American Jurisprudence (verbo Negli-' gence), Section 118 (part of which is quoted in the brief of defense counsel), reading: “ * * * Concisely stated, the general rule is that a landowner owes no' duty of affirmative action to render his premises safe for a mere trespasser, young' or old. One who enters upon private property for his own purpose, without invitation by, or the consent of, the owner or occupant,
 
 in the absence of any circumstance ■ wherefrom his presence could reasonably be anticipated by the latter,
 
 does so at his own peril so far as defects in the premises are concerned, notwithstanding he is of tender years. There can be no general
 
 *549
 
 duty on the part of a landowner to keep his land safe for children, or even free from hidden dangers, if he has not, directly or by implication, invited or licensed them to come there,
 
 or has not been charged with knowledge of the presence of children upon the premises.
 
 * * * ” (Italics ours.)
 

 Further, with reference to the matter of anticipating the presence of children (irresponsible creatures), it is said in Sections 144 and 145 of the same authority ■ that:
 

 “Sec. 144. On the other hand, a sound basis for the attractive nuisance doctrine is to be found in the general rules which determine the duty of an owner or occupant to trespassers and the degree of care which must be exercised toward children of tender years. The fact that a child may be a trespasser does not necessarily exonerate the owner of premises accessible to and likely to be frequented by children from the duty to take reasonable precautions for their safety.
 
 It is a general rule that an owner or occupant must exercise ordinary care to prevent injury to a trespasser whose presence upon the premises is reasonably to be anticipated.
 
 Accordingly, some courts do not hesitate to assert a right of recovery under the doctrine of attractive nuisance notwithstanding the injured child is shown to have been a trespasser.
 

 ******
 

 “Sec. 145. * * * The foundation of liability for negligence is knowledge — or what is deemed in law to be the same: opportunity by the exercise of reasonable • diligence to acquire knowledge — of the peril which subsequently • results in injury. Consistent with such general principle is the rule applied in attractive nuisance cases, that the defendant is not liable unless he knew, or reasonably ought to have known, that the structure or instrumentality was, alluring to children and endangered them. One of the essential conditions of liability under the doctrine of attractive nuisance is that there must have been ground for anticipating the presence of the injured child, since, unless the presence of the child is reasonably to .be anticipated, the duty of taking precautions for its safety does not arise. The owners of land are not required in using it for legitimate purposes to guard against every possible danger to children. To children whose presence upon the premises cannot reasonably be anticipated, they owe no duty to keep their land free from dangerous conditions. Moreover, to authorize a recovery it must be shown that the defendant knew, or ought to have known, that the child would make use of the instrumentality, and provided no guards or protections from the. peril to which it was exposed, although he might reasonably have done so.” (Italics ours.).
 

 With knowledge that stock usually grazed on or near its right-of-way in the vicinity of the place of the accident, defendant herein should reasonably have anticipated that some might venture on to the floored portion of the trestle — a place from which they could not possibly escape death or injury on the approach of a fast
 
 *551
 
 train — and it should have protected them from the dangerous agency created by the above mentioned combination of factors. But it did nothing to provide protection — ■ riot even the installing of cattle guards at the ends of the trestle as could have been done — and its failure in this respect was carelessness and a contributing cause of the accident. Thus, defendant has failed to discharge the burden of proving that the killing of the horses was not the result of fault or carelessness on its part, and it is responsible to plaintiff for their value, which, the record shows, was $520.
 

 The case of Smith v. Thompson, La.App., 185 So. 71, in which is discussed the matter of an alleged trap for animals on a railroad right-of-way, does not seem to be appropriate here. There the railroad had enclosed its premises with a fence, as the law encourages it to do, and the mules gained entrance thereto because of the falling of a fence post. From the opinion it does not appear that the mentioned condition resulted from any negligence or fault on the part of the defendant.
 

 For the reasons assigned, the judgment of the Court of Appeal is now reversed and set aside, and it is ordered, adjudged and decreed that the judgment of the District Court, which was in favor of plaintiff and against defendant for $520/ 'together with 5% per annum interest thereon from judicial demand until paid, be reinstated and made the final decree of this court. Defendant shall pay all costs.