Plaintiff sued to recover the value of three cattle that were killed by defendant's trains on different dates, near the Village of Pleasant Hill, Sabine Parish, Louisiana. The killing of the cattle, it is alleged, resulted from the negligence of defendant and the operatives of its trains in the following respects, to-wit:
(1) That the trains were operated at a speed so great that they could not be stopped within the distance the engineers could see;
(2) That the operatives were not keeping a proper lookout;
(3) That although each side of defendant's right-of-way below and above where the animals were killed, was fenced, no cattle guards at the McGinnie or Bunkie crossing, near petitioner's home were provided, and it was through the openings where these guards should have been that the cattle entered upon said right-of-way.
It is further alleged and proven that the cattle had the right to roam at large as no law required the owner to confine them.
Defendant admits that the cattle were killed by its passenger trains at the places, on the dates and about the times of day alleged, but it is denied that in either instance the killing occurred because of any negligence or carelessness of its agents in charge of the operation of the trains. The answer further gives in detail the facts and circumstances attending each killing as appreciated by the engineers and firemen. As we shall give and discuss the facts of each killing later in this opinion, to avoid repetition, they are not here related.
From a judgment for plaintiff as by him prayed, the defendant appealed.
At the McGinnie or Bunkie crossing and south of it, the defendant's right-of-way is one hundred feet wide, and the track traverses the center of it. Prior to the dates the cattle were killed defendant had fenced both sides of its right-of-way but each line of fence ended about fifty feet below the crossing. No cattle guards were installed. It is obvious that the opening between the fence lines served to admit cattle at will to enter and graze upon the area embraced in the right-of-way. This being true, Act No. 70 of 1886, section 8154, Dart's Statutes, is applicable. This act, inter alia, provides that in suits to recover the value of live stock killed or injured by a railroad company, the burden devolves upon the company in order to escape liability, to prove freedom from fault or carelessness on the part of its agents in the running and operation of the train. In other words, to make out a case a plaintiff *Page 348 
has only to prove that the company's train killed or injured the live stock, and the value thereof. But the act further provides that where the railroad company maintains adequate fences and cattle guards on its right-of-way the burden of proving negligence against the company in a suit to recover the value of cattle killed or injured rests upon the plaintiff. The above cited act is relied upon by plaintiff herein.
No law of this state forbids a train to be operated at a speed so rapid that it cannot be stopped within the distance the engineer can see. Such a rule would require trains to be stopped entirely or their speed reduced so materially in case of heavy fog, smoke or dust storms that schedules could not be observed. The same would be true as regards passenger trains that travel rapidly at night, because they cannot be stopped within the distance the engineer is able to see down the track even with the aid of powerful headlights. Of course, in the day time, when the weather is fair, any train may be stopped within the distance an engineer, having good eyesight, can see. The negative of plaintiff's contention on this phase of the case is well established by the jurisprudence of this state. See: Boyd v. Kansas City, Shreveport Gulf Railway Co., La. App., 147 So. 100; Jeter v. Texas Pacific Railway Co., La. App., 149 So. 144.
The general rule with regard to the operation of passenger trains in the open country is that any speed is permissible which is consistent with their own safety and that of their passengers. See: Davis et al. v. Alexandria Western Railway Co., 152 La. 898, 94 So. 436; Campbell and Company v. Texas and Pacific Railway Company, La. App., 152 So. 351.
There is no law of this state that requires a railroad company to fence its right-of-way and provide adequate cattle guards at crossings, nor to maintain the same in good condition after being erected. The failure to provide such fences and guards and maintain them is not negligence per se. See Friedman's Estate v. Texas and Pacific Railway Company,209 La. 540, 25 So.2d 88, 160 A.L.R. 1228, and cases therein cited.
In the opinion of this court in the Friedman's Estate case we said: "The fact that the right-of-way was not fenced has no legal significance beyond that which involves the burden of proof." 24 So.2d 167, 169.
The same may be said in the case at bar, since the fence is not of the character adequate to keep roaming cattle from entering upon the right-of-way.
A red steer with white face was killed February 18, 1947 at six o'clock P.M., between 300 and 400 feet south of said crossing. The testimony of the engineer and fireman in charge of the train, which consisted of an engine and three passenger coaches, clearly repels any suggestion of negligence in connection with the death of this animal. There is no testimony of probative value that contradicts that which these two men gave. The engineer testified that as the train approached the crossing it was going slightly up-grade at forty miles per hour; that as the crossing was passed and the headlights focussed down the track he observed the animal running between the rails, going from him; that he rang the bell, blew the whistle and applied the brakes and the train's speed was reduced to about twenty-five miles per hour when the steer was run over. He also testified that this train, going at forty miles per hour, could not be stopped in less than 1,000 feet. His testimony on this point is corroborated by that of other trainmen of long experience. In all material respects the testimony of the fireman supports that of the engineer.
A yellow colored steer was killed November 19, 1946, at about six-thirty o'clock P.M. The train consisted of engine and three passenger cars and was traveling at about forty miles per hour. The steer was first revealed to the engineer by the headlights when it was approximately 300 feet away, standing about ten feet from the right side of the track, upon a slight elevation. Bushes and weeds prevented earlier discovery of the animal. When the train was about 200 feet from the steer, he started across the track. The bell was rung, the whistle blown and brakes applied in an effort to prevent the impending collision, but without success. It is also shown that *Page 349 
it would require 1,000 feet to stop the train. These facts are testified to by the engineer and his testimony is corroborated by the fireman. No other testimony in the case, having to do with this steer's death materially conflicts with the testimony of these two trainmen.
A red colored cow was killed at ten-thirty o'clock A.M., December 21, 1946. In this instance, as in the others, the train consisted of engine and three passenger coaches, and was traveling at forty miles per hour, and like the others it could not have been stopped under 1,000 feet. The engineer observed several cattle on the right side of the track, about one-fourth of a mile away. As the train approached, all of the cattle, save the one killed, crossed the track safely and when the train was about 250 or 300 feet from the other one, it suddenly attempted to cross over and was killed. The engineer made the same effort to avert killing the animal as was done in the other two instances. It is clearly shown that all three cattle were unavoidably killed. There was no negligence on the part of the trainmen in either case.
It goes without saying, as courts have often held, that if a train was required to slow down every time the engineer saw an animal on the right-of-way, in areas where stock legally roam at large, schedules could not be observed, and danger from more serious accidents would be greatly enhanced.
Lastly, plaintiff contends that by leaving the fence lines open at their northern ends and allowing cattle to go upon the right-of-way, created a trap which makes applicable the decision of the Supreme Court in the Friedman's Estate case, supra. The cases are not apposite. The facts in the Friedman's Estate case were uncontradicted. They show that a trestle in defendant's track was partially floored. The killed animals had strolled or were driven by the approach of a fast moving passenger train, upon the floored part of the trestle and could not go forward nor to either side without jumping several feet below. Of course, they would not turn and go toward the moving train. These conditions, the court said, constituted a trap and rendered the railroad company responsible for the value of cattle killed because of it.
In the present case, the presence of the two lines of fence, so far as we are able to perceive, contributed to no extent to the accidents. Most likely the animals would have been on the track where killed if no fence had been there. There is no testimony whatever to indicate that either animal got on the track after being frightened by the train and attempting to go through the fence. The contrary is shown.
For the reasons herein assigned, the judgment from which appealed, is reversed, annulled and set aside and plaintiff's suit is dismissed at his cost.