AYRES, Judge.
This is an action in tort wherein plaintiffs seek to recover of the defendant dSmages for the loss of cattle killed during 1964 and 1965 by defendant’s trains. Plaintiffs’ cause of action is predicated upon the contention that defendant failed to maintain a fence enclosing its right of way. There are no other charges of negligence. From an adverse judgment, plaintiffs prosecute this appeal.
Plaintiffs’ property, traversed by defendant’s railroad, was inherited by them from their father who, November 19, .1952, granted a right of way therefor. In the grant defendant agreed to construct and maintain a 4-strand barbed-wire fence on both sides of its right of way and to provide an underpass for the movement of livestock from one side of the railroad to the other. Thus, plaintiffs contend defendant violated its contract and that, because of such violation, they sustained damage as above set forth.
The record establishes these facts: The railroad was constructed soon after the grant of a right of way therefor in 1952. The fence was constructed in accordance with the agreement. The underpass was constructed, as was one grade crossing, for which cattle guards were provided. The fences extended across the right of way to accommodate both grade crossing and underpass. These crossfences were cut in 1960 due to the movement of machinery operating on the railroad right of way, but were repaired soon thereafter, on orders of defendant’s roadmaster, long before plaintiffs’ cattle were killed.
Only one witness testified on behalf of plaintiffs, namely, Herbert A. Cushman, one of plaintiffs, whose testimony, both as to the maintenance of the fence and as to washouts claimed to have occurred underneath the fence, was very vague. This was obviously due to his very casual observation.
This case was instituted under the theory that the cattle were killed as a result of defendant’s failure to maintain the fence. It may be first observed, however, that there is no proof of the failure to maintain the fence. There is no showing that the fence was inadequate or down at the time. Nor is there any evidence of a causal relationship between any failure on defendant’s part and the death of the cattle. There is no showing as to the manner in which the cattle gained access to defendant’s tracks.
We may here point out, from the record, that, although plaintiffs had cattle on both sides of the right of way, no contention is made that their cattle had ever, on any other occasion, been upon the railroad right of way. Plaintiffs’ witness did, however, testify that he had seen cattle on the right of way, but he made no claim that these cattle were plaintiffs’ cattle or that such cattle were in the vicinity of plaintiffs’ property.
Moreover, we can conceive of no sound basis as to why defendant’s contractual obligation to construct and maintain a fence enclosing its right of way would in any way affect defendant’s statutory responsibility with reference to damages which might be occasioned by injuries to or death of cattle upon its tracks. The law applicable to suits of this character is contained in Acts 70 and 110 of 1886 (LSA-R.S. 45:-503 and 504), and, during this extensive period, has remained basically unchanged. Under Section 503 of the above statutes, it is provided:
“Railroad companies shall not be responsible for the killing or injury of stock if their line of track is fenced in and kept in good order, and if they have erected and maintained, in good order, suitable cattle guards at crossings.”
Section 504 provides:
“In suits against railroad companies for the loss of stock killed or injured by them, it is sufficient, in order for the plaintiff and owner to recover, to prove the killing or injury, unless it is shown by the defendant company that the killing or injury was not the result of fault or *743 carelessness on their part or the negligent or indifferent running or management of their locomotive or train.”
The rationale of these statutes is that (1) a railroad company is not an insurer of livestock which may have access to its right of way or tracks; (2) where a railroad right of way is fenced and maintained, plaintiff bears the burden of alleging and proving actual negligence; and (3) where the right of way is not so fenced, the burden shifts to the railroad company to prove freedom from negligence.
In the instant case, as defendant’s right of way was fenced on both sides with a 4-strand barbed-wire fence, regularly inspected and repaired when necessary, there was no obligation on the part of the defendant to establish its freedom from fault. There is no statutory obligation on a railroad to fence its tracks; the penalty for not doing so is the assumption of the burden of establishing that the injury to or death of livestock upon its tracks was not the result of its negligence. Sanders v. Illinois Cent. R. Co., 127 La. 917, 54 So. 147 (1911); Jackson v. Texas & P. Ry. Co., 166 La. 718, 117 So. 805 (1928); Friedman v. Texas & P. R. Co., La.App., 2d Cir., 18 So.2d 845, 1944; Daughdrill v. Texas & N. O. R. Co., La.App., 1st Cir., 20 So.2d 644, 1945.
These statutes effected a change in an important respect with reference to the rule which obtained prior to their enactment. Theretofore a claimant had the burden of establishing the killing or injury of his livestock and the fault of the railroad. Such rule still obtains where the railroad company encloses its right of way by an adequate fence which is properly maintained. In this case, the defendant constructed and maintains an adequate fence enclosing its right of way.
The judgment appealed is therefore affirmed at plaintiffs-appellants’ cost.
Affirmed.