HOOD, Judge.
Elliott Bush sues defendant railroad for the value of a registered bull which was. killed when struck by the defendant’s train. The trial court rendered judgment in favor of plaintiff, and defendant has appealed.
Plaintiff bases his claim primarily on defendant’s alleged breach of a contract to. repair a fence located along the south line of the railroad right of way. Alternatively, he seeks to recover in tort under the-provisions of LSA-R.S. 45:503, 45:504. Defendant denies that it damaged the fence,, that it obligated itself to make repairs to-that fence, or that the loss of the bull resulted from its failure to make any such, repairs. It also denies liability in tort for the damages sustained by plaintiff.
The evidence shows that on March 28y 1964, one of defendant’s trains was derailed in an open farming area in St. Landry Parish. Plaintiff owned a tract of land located south of and adjacent to the railroad right of way, and there existed a five' strand barbed wire fence running along the south line of the railroad property in that immediate vicinity. To get the derailed cars back on the track it was necessary for a bulldozer, operated by the railroad’s contractor, to go upon plaintiff’s land. The bulldozer entered the Bush property through a gate in the above mentioned fence, and it then was driven along the south side of the fence a distance of about one-fourth of a mile to a point near the place where the cars were derailed. A cable was then, stretched over the fence from the bulldozer to the derailed cars, and with the use of this, cable the bulldozer pulled the cars back on. the track.
The fence which ran along the south line-of the railroad right of way at that point was erected by the railroad a number of years ago, but the railroad discontinued maintaining it about the year 1958. Plain-. *510 tiff has been maintaining the fence since that time and has been using it as a part of the enclosure for his pasture.
Plaintiff contends that in entering his property through the gate the bulldozer operator broke one gate post and pulled the other gate post up. He also contends that in getting the cars back on the track, about one-fourth mile from the gate, the same operator broke two fence posts, broke two strands of barbed wire, and pulled other wires loose from four fence posts. The defendant repaired the two gate posts, but plaintiff contends that it has never repaired the damages which it did to the fence near the point where the cars were derailed.
Plaintiff’s cattle were removed from that pasture on the day this work was done. About three weeks later plaintiff personally repaired the damages to the fence which he said had been made by defendant’s agents or representatives. The repairs which he made consisted of righting the fence posts and tying together with other wire the two strands of barbed wire which had been broken. He testified that after making these repairs he was satisfied that the fence was adequate to retain his herd, and he then put his herd of cattle back in that pasture.
On May 26, 1964, or about five weeks after plaintiff repaired the fence and let his cattle back into the pasture, his bull escaped from the enclosure and was struck and killed by defendant’s train. The accident occurred at about the place where the ■cars had derailed two months earlier. The only evidence which tends to show that the bull went through the part of the fence which allegedly had been damaged by defendant is the statement of plaintiff that “his tracks show right where that fence was damaged.” No additional repairs were made to the fence until August, 1964, when plaintiff rebuilt it. He testified that he ■continued to leave his cattle in that pasture during that time, and that none of them escaped until immediately before he rebuilt the fence when a brahma heifer and some calves got out. He did not state, however, that the heifer and calves got through the fence at the point where defendant allegedly damaged it.
Plaintiff testified that at the time the derailed cars were being put back on the track plaintiff entered into an agreement with agents of the defendant to the effect that the railroad would repair any damages which it caused to the fence. Representatives of the railroad acknowledge that they agreed to repair the two gate posts which had been broken or pulled up, but they and the bulldozer operator firmly deny that the fence was damaged at any other point or that any promises were made or agreement entered into to the effect that defendant would repair the fence. The evidence shows that the two gate posts were properly repaired by defendant, as promised, but the railroad made no repairs to the fence at the place where the bull allegedly escaped.
The trial judge made no determination as to whether an agreement had been entered into between plaintiff and defendant relating to the repair of the fence. He rendered judgment in favor of plaintiff on the basis of his finding that “the cause of the death of the bull was the damage done to the fence, and the plaintiff repaired it in such a fashion as he thought could contain his bull which had no record of fence-jumping or fence-breaking.”
After reviewing the evidence carefully, we conclude that it fails to establish that an agent or representative of the defendant railroad ever promised or agreed to repair the fence. A representative of the railroad did tell plaintiff that he could have some old railroad ties which he could use in making his own fence repairs, and it is possible that plaintiff misinterpreted that as a promise that the railroad would repair the fence. At any rate, we find that no agreement was entered into between plaintiff and the railroad to the effect that the latter would make fence repairs.
*511 Since no contract to repair the fence ever existed, plaintiff cannot recover from defendant on the grounds of an alleged breach of contract.
We now turn to plaintiff’s alternate claim that defendant is liable in tort for the loss of the bull.
In a suit against a railroad company for the loss of stock killed or injured by the railroad’s train, the plaintiff and owner makes out his case by showing that the animal was killed or injured by the train, and the burden of proof then shifts to the defendant railroad to show that the killing or injury was not the result of fault or carelessness on its part or the negligent or indifferent running or management of its locomotive or train. LSA-R.S. 45:504; Richard v. Kansas City Southern Railway, 55 So.2d 12 (La.App. 1st Cir. 1951); Sylvester v. Texas & Pacific Railway Co., 183 So.2d 81 (La.App. 3d Cir. 1966); and Daughdrill v. Texas & N. O. R. Co., 20 So.2d 644 (La.App. 1st Cir. 1945).
The accident in the instant suit occurred at 1:00 a. m., at which time it was dark and there was a dense fog. The train which struck plaintiff’s bull was a freight train consisting of approximately 90 cars, 81 of which were loaded. The headlights on the train and its brakes were working properly. The train was traveling at a speed of about 50 miles per hour when the accident occurred, that being well within the 60 miles per hour speed limit. Because of darkness and fog, the engineer was unable to see the bull until the engine was within 85 or 90 feet of it. He observed the bull ahead of the train as soon as it was possible for him to do so, however, and upon seeing it he promptly blew his whistle several times. He made no attempt to make an emergency stop, because he explained that a distance of about one and one-quarter miles would be required to bring the train to a stop, and that it would have been completely useless and dangerous for him to apply the brakes suddenly under those circumstances.
In this state a railroad company is not required by law to fence its right-of-way and provide adequate cattle guards at crossings, or to maintain the same in good condition after being erected. The failure to provide such fences and guards and to maintain them is not negligence per se. Cox v. Texas & Pacific Railway Co., 56 So.2d 202 (La.App. 2d Cir. 1951); Moody v. Texas & Pacific Railway Co., 37 So.2d 346 (La.App. 2d Cir. 1948); Friedman’s Estate v. Texas & Pacific Railway Co., 209 La. 540, 25 So.2d 88 (1946).
A railroad company is not required to slow its train during rainy or foggy weather, even though the weather prevents the operator of the locomotive from having good visibility of the tracks ahead. Smith v. Thompson, 185 So. 71 (La.App. 2d Cir. 1938). There is no law which requires a train to be operated at such a rate of speed so as to be able to stop within the range of vision of the engineer in all eventualities. The speed of the train need not be reduced because of inability to stop it within the range of vision of the engineer, because of rounding a curve, an embankment obscuring the view, or because of rain, fog, smoke, darkness or other such conditions. Sylvester v. Texas & Pacific Railway Co., 183 So.2d 81 (La.App. 3d Cir. 1966).
The evidence in the instant suit shows that the train was being operated in a careful and prudent manner, and we find no negligence on the part of the operators of the train in striking and killing plaintiff’s bull.
In our opinion the trial court erred in-holding that the defendant railroad was liable in damages to plaintiff, either on the grounds of breach of contract or in tort. The judgment of the trial court, therefore, must be reversed.
For the reasons herein set out, the judgment of the trial court is hereby reversed and judgment is rendered in favor of defendant, The Texas & Pacific Railroad *512 Company, and against plaintiff, Elliott Bush, rejecting plaintiff’s demands at his costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.