WICKER, Judge.
Plaintiff appeals from a judgment dismissing her suit for personal injuries sustained as a result of an accident between her automobile and a defendant train. The collision occurred at approximately 6:30 a. m. on December 24,1974 at a railroad crossing on the eastbound side of Chef Menteur Highway near France Road in the City of New Orleans.
Testifying on behalf of plaintiff, in addition to herself, was the investigating police officer. Defendant introduced the testimony of their train crew and an independent eye witness, Warren P. Borras.
Plaintiff testified she left home at 6 a. m. to go to work, traveling the same route on Chef Menteur Highway, as she had for the past three months. Because of heavy fog she was proceeding at 10 miles per hour. Her headlights and windshield wipers were on. She stopped at a red light two blocks from the France Road intersection. When the light changed she proceeded toward France Road in the left-hand lane of traffic and slowed down before reaching the tracks. She looked around as far as possible, but because of heavy fog she could see nothing. Nor did she hear bells, whistles or railroad signals at the crossing prior to the accident. About 150 feet from the intersection, where the tracks cross Chef Menteur Highway, her automobile was struck by the “cowcatcher” of the train, damaging the left front fender of her automobile and injuring plaintiff, breaking her legs.
On cross examination it was established that in answer to interrogatories plaintiff had stated she saw a signal light as she approached the tracks and heard the train whistle blow at that time. Then she applied her brakes. In a deposition plaintiff stated she had heard a train whistle while she was being struck. At the trial she denied hearing or seeing anything at all until after the accident.
The investigating police officer, who arrived one hour after the accident, testified he spoke with the engineer who stated the flashing signal was not working, so he sounded the bell and then the car ran into the train.
The engineer testified the train, which consisted of 28 cars, was traveling on the inside track near the Chef-France Road crossing at a speed of 4 to 5 miles per hour. The weather was a light haze. He had a clear view of eastbound traffic as he approached the Chef crossing. The bell was on, the front train light was on, and the whistle was blowing. The train crossed the westbound track and about 40 to 50 feet from the eastbound side he noticed a car stopped on the curb side of the road, and plaintiff’s automobile on the neutral ground side of the road proceeding directly into the path of the train. Plaintiff did not appear to see the train, so he immediately put his engine in emergency which automatically sets the brakes. However, it was too late to avoid the accident and plaintiff’s vehicle ran into the front steps of the train which are located at the front of the engine on the right side. The testimony of the railroad employees is essentially the same as that of their engineer. They agree that the whistle was blowing and the signals were working.
Of particular importance is the testimony of Warren Borras, the only independent eye witness. Borras testified: He was on his way to work proceeding on Chef Menteur Highway in the far right-hand lane of traffic, i. e., the curb side. When he approached France Road he saw the train approaching and brought his vehicle to a stop. The train was on the left-hand, or opposite side of the street from him, moving from left to right. He saw two flashing lights, heard the horn, saw the train light *109 and heard the bell ringing. He contemplated trying to get across the tracks before the train, but realized he did not have time. Plaintiff passed his car in the left-hand lane at a high rate of speed and struck the train. This witness immediately got out of his car and went to assist plaintiff.
Appellant contends: (1) The trial court erred in disregarding the testimony of the investigating police officer; and (2) defendant violated Traffic Ordinance 38-103 of the City of New Orleans, in failing to have a crossing gate lowered, or a flagman present.
We do not agree with appellant’s first contention. The officer was not an eye witness, nor was he the only disinterested witness. Nor do we agree that the trial court disregarded this officer’s testimony.
Relative to appellant’s second contention, we are of the opinion that the trial court found, and we agree, that defendant has not violated any provisions of Traffic Ordinance 38-103.[1] According to a preponderance of the evidence, the lights and signals were working and warning signals were given which plaintiff could have and should have seen and heard. Thus, we fail to see wherein the circumstances surrounding the crossing involved in this litigation were such to require additional warnings when defendant train was in the act of traversing this intersection.
In Sule v. Missouri Pacific Railroad Company, La.App., 181 So.2d 280, at 283, this court said:
“Our settled jurisprudence is that, in negotiating a railroad crossing, the driver of a motor vehicle must use his senses of sight and hearing for possible oncoming trains; he is burdened with the responsibility of seeing and hearing that which he might and could have seen and heard; he is required to use such care as is commensurate with the existing danger; and, if his view of the right-of-way is obstructed, he must use a higher degree of caution.”[2]
The presence of heavy fog or mist does not make an ordinary crossing a dangerous trap or a blind corner.[3]
In the instant case, plaintiff was familiar with the intersection and, if the fog was thick as she claims, she was under an even greater duty to proceed with caution. Yet, plaintiff never saw the train until impact. She also failed to hear the bell and whistle which all of the other eye witnesses heard, or if she did hear it, as she averred in her deposition and interrogatories, she failed to take any evasive action.
Even if there was no negligence on the part of plaintiff, we cannot hold the defendant liable, for we find no negligence in the operation of the train, and where there *110 is no fault there can be no liability under LSA-C.C. Art. 2315. We conclude that the defendant was in no way negligent and at all times acted properly and in conformance with its legal duties.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

.“Section 38-103. Obedience to signal indicating approach of railroad train.
Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop not less than fifteen feet (15') from the nearest rail of such railroad and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
(1) A clearly visible electrical or mechanical signal device gives warning of the immediate approach of a railroad train; or
(2) A crossing gate is lowered or a human flagman gives or continues to give a signal of the approach or passage of a railroad train; or
(3) A railroad train approaching within approximately fifteen hundred feet of the highway crossing emits a signal audible from such distance and such railroad train by reason of its speed or nearness to such crossing is an immediate hazard; or
(4)An approaching railroad train is plainly visible and is in hazardous proximity of such crossing.
No person shall drive any vehicle through, around or under any crossing gate or barrier at a railroad grade crossing while such gate or barrier is closed or is being opened or closed. (M.C.S., Ord. No. 3816, § 1, 6-6-68.)”

. See also Watts v. New Orleans Public Belt Railroad, La.App., 287 So.2d 812; Kavanaugh v. Travelers Insurance Company, La.App., 203 So.2d 780; Bertrand v. Missouri Pacific Railroad Company, La.App., 160 So.2d 19.

. Breaux v. Texas and Pacific Railway Company, La.App., 176 So.2d 640; Gray v. Illinois Central Railroad Company, La.App., 132 So.2d 61; Guidry v. Texas & N. O. R. Co., La.App., 56 So.2d 611.