399 So.2d 1303 (1981)
Thomas U. BUCHHOLZ, Stephen D. Treuil, and Richard P. Brazil
v.
DEALERS TRANSPORT COMPANY, Willie J. Braswell and Liberty Mutual Insurance Company.
MISSOURI PACIFIC RAILROAD COMPANY
v.
Willie J. BRASWELL, Dealers Transport Company and Lumbermen's Mutual Insurance Company.
Nos. 12003, 12004.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1981.
*1304 Ramsey, Bodron, Thames & Robinson, William W. Ramsey, Vicksburg, for plaintiffs/appellants Stephen D. Treuil and Missouri Pac. R. Co.
Butler & Reynolds, Peter J. Butler, New Orleans, for plaintiff/appellant Stephen D. Treuil.
Phelps, Dunbar, Marks, Claverie & Sims, Esmond Phelps, II, New Orleans, for plaintiff/appellant Missouri Pac. R. Co.
Borrello & Huber, Bruce J. Borrello, Metairie, for defendants/appellees Dealers Transport Co., Willie J. Braswell and Liberty Mut. Ins. Co.
Before BOUTALL, SCHOTT and BARRY, JJ.
BARRY, Judge.
This litigation arose when a tractor-trailer truck owned by Dealers Transport Co. (Transport), driven by Willie J. Braswell and insured by Liberty Mutual Insurance Company (Liberty), struck the side of a train engine owned by Missouri Pacific Railroad (Railroad) and operated by Steven Treuil with two crew members Thomas U. Buchholz and Richard Brazil. The Railroad sued Transport and Liberty for damages to its engine. The Railroad employees, Treuil, Brazil and Buchholz, also sued Transport, its driver Braswell and its insurer Liberty for personal injuries. Braswell filed suit against the Railroad for his injuries and Liberty intervened to recover compensation benefits paid to Braswell. The lawsuits were consolidated and after trial the train crew, Buchholz and Brazil, were awarded damages and all other parties were denied recovery. The train operator Treuil and the Railroad lodged devolutive appeals which are consolidated.
*1305 In April, 1976 at approximately 7:00 a. m. appellant's freight train was proceeding in St. Charles Parish in a westerly direction and approached the town of Killona and the railroad crossing at State Highway 3141. This area of the railroad line had a speed limit of 50 m. p. h., but this particular morning the Railroad had in effect a train order limiting the maximum speed to 40 m. p. h. It is uncontroverted that as the train approached the Highway 3141 intersection it was traveling between 30-35 m. p. h. and that a heavy fog was at ground level restricting visibility to no more than 100 feet ahead.
When the train was approximately 2,200 feet before the intersection its engine tripped an electric circuit on the track which commenced operation of a flasher signal and bell located at the highway crossing. Treuil then engaged the locomotive horn as an additional warning to potential motorists and pedestrians of the approaching train.
The train engine cleared approximately three-fourths of the highway crossing when it was struck on its side by the tractor-trailer truck owned by Transport and driven by Braswell. The impact threw the train crew, Treuil, Brazil and Buchholz, from their seats to the floor of the engine. Treuil engaged the emergency brake and the train stopped approximately 300 feet past the crossing where the collision occurred.
The trial judge gave oral reasons for judgment finding Transport's driver negligent for his failure to hear the bell and horn and see the flashing signals at the crossing. The lower court also found that the weather was extremely foggy producing limited visibility and the train's speed of 30-35 m. p. h. constituted negligence because Treuil had a duty to use "common sense" to reduce the train speed because of the restricted visibility: no authority is cited for this decision.
It is axiomatic that each case presenting a train-vehicle collision should be tried on its own facts and circumstances and the negligence of the parties are matters of factual determination to be followed by application of proper law. Odom v. Hooper, et al, 273 So.2d 510 (La. 1973). It is equally well settled that factual determinations by the trial court are not to be disturbed in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La. 1973). The pertinent part of the lower court's reasons for judgment provide:
"The court concluded without any doubt whatsoever that on the morning in question, that the weather conditions were a very foggy status, making visibility very, very poor. The court is of the opinion that the engineer of the train, Steven Treuill, did, in fact, sound his horn and ring his bell, and the court does find that the railroad crossing signals were working on the morning in question."
Appellants do not contest the trial court's finding of fact but assert error as a matter of law in finding negligence under the circumstances of this particular case. Early jurisprudence confirms that a railroad company is not required to slow its trains during rainy or foggy weather which prevents the operator of the locomotive from having good visibility. Jeter v. Texas and Pacific Railroad Company, 149 So. 144 (La.App.2nd Cir. 1933), citing Foster v. Texas and Pacific Railway Company, 5 La.App. 601 (1st Cir. 1927). Also, the presence of heavy fog does not make the ordinary crossing a dangerous trap. Breaux v. Texas and Pacific Railroad Company, 176 So.2d 640 (La.App. 1st Cir. 1965).
It appears the trial judge applied common sense rules of the road applicable to automobiles in order to find the Railroad and its engineer guilty of negligence. However, the distinction between trains and automobiles was drawn in Homeland Insurance Company v. Thompson, 12 So.2d 62 (La.App. 1st Cir. 1943) where there was heavy ground fog which prevented visibility beyond 40 to 160 feet, the train was traveling 40 to 50 miles per hour and struck a truck stalled on the train tracks. The court held there was no negligence in operating the train at that speed under those conditions and stated:

*1306 "The rule of law which requires an automobile to be driven at such a rate of speed so as to be stopped within the range of the operator's vision does not apply to operators of a train on a railroad. The train of the defendant company was being operated on its own property; it could not be so easily stopped, nor could it be veered in any other direction. To require a train to be so operated in a sparsely settled community and at a time when traffic is not usually present at such a speed as to permit its being stopped within the distance an object may be seen on the track during a heavy fog would seriously interfere with train schedules in which the public is as much interested as the railroad company." Id. at p. 64.
This Circuit also adopted the same reasoning in holding that a train is not required to slow its speed in rainy or foggy weather. In American Employers' Insurance Company v. Missouri Pacific Railroad Company, 111 So.2d 380 (La.App.Orl. 1959) a truck was stalled on railroad tracks and was struck by a train traveling approximately 30 miles per hour in heavy fog with visibility between 100 and 200 feet. There, as in this appeal, the signal light located at the crossing was flashing and ringing and the train's bell was functioning. In holding the train engineer free of negligence, this court stated:
"The law applicable to the facts as revealed herein and as found by the trial court appears to be well settled. The courts have recognized that fog and rain prevent a locomotive's operators from having good visibility of the tracks ahead, the same as the existence of a curve; and judges have rationalized on innumerable occasions that a railroad company is not required to slow its trains during rainy or foggy weather."
Appellees submit that the trial judge correctly reasoned that this train should operate at a speed which would permit it to be stopped within the engineer's range of vision. However, our jurisprudence dictates otherwise. "It is too well settled to require citation that the law does not require trains to be operated at a speed permitting them to be stopped within the range of vision of its operators." Campbell and Company v. Texas and Pacific Railroad Company, 152 So. 351 (La.App. 2nd Cir. 1934). This rule was maintained shortly thereafter when visibility was impaired because of a sharp curve in the track. Smith v. Thompson, 185 So. 71 (La.App. 2nd Cir. 1938), citing with approval visibility impairment as a result of rainy or foggy weather as held in Foster v. Texas and Pacific Railroad Company and Jeter v. Texas and Pacific Railroad Company, supra.
We note that in sparsely settled areas, such as this location in St. Charles Parish, a train may proceed at any speed consistent with the legal speed limit and the safety of the train. Moody v. Texas and Pacific Railroad Company, 37 So.2d 346 (La. App. 2nd Cir. 1948). The "open country doctrine" was followed by this court in Theriot v. Texas and New Orleans Railroad Company, 220 So.2d 563 (La.App. 4th Cir. 1969), writ refused, 254 La. 142, 222 So.2d 886 (1969).
Our settled jurisprudence is that, in negotiating a railroad crossing, the driver of a motor vehicle must use his senses of sight and hearing for possible oncoming trains; he is burdened with the responsibility of seeing and hearing that which he might and could have seen and heard; he is required to use such care as is commensurate with the existing danger; and, if his view of the right-of-way is obstructed, he must use a higher caution. Sule v. Missouri Pacific Railroad Company, 181 So.2d 280 (La.App. 4th Cir. 1965) at p. 283. Serpas v. New Orleans Public Belt Railroad, 356 So.2d 107 (La.App. 4th Cir. 1978).
The trial judge did not cite any authority for holding the train engineer and Railroad negligent. However, in an effort to sustain the lower court's "common sense" theory, appellee relies upon two cases which are factually distinguishable and legally inapplicable. McFarland v. Illinois Central Railroad Company, 122 So.2d 845 (La.App. 1st Cir. 1960) involved a dangerous crossing *1307 because of a sharp angle at which the street intersected railroad tracks and where the sharp incline of the street combined with trees, brush, and other growth which seriously hampered the motorist's viewthis constituted a dangerous crossing and a trap requiring a greater duty on the part of the railroad with respect to the obstructions. The train's speed of 30 m. p. h. as it approached the crossing was held excessive under those facts. The crossing in the instant case was not and is not claimed to be a trap.
Appellee primarily relies upon Odom v. Hooper, et al, supra, where the railroad was found negligent in parking an unlighted boxcar at an intersection which was struck by an automobile at 2:35 a. m. That appeal involved review of a summary judgment which dismissed the vehicle owner's lawsuit. Under those facts our Supreme Court said there are instances where the railroad should be aware of atmospheric hazards, and warnings should be extended to alert drivers to unusual obstacles (the boxcar) in their paths. The court concluded that the alleged railroad negligence was a matter of fact, summary judgment was inapplicable, and the case was remanded for trial. The concurrence of Justice Tate specifies the limited effect of that ruling is to apply to all night motorists the same standard of care when they run into a negligent obstruction on the highway not reasonably anticipated or observedwhether that obstruction be a truck or a train or whatever.
We feel that if common sense is to be applied to the operation of trains under varying weather and road conditions, then this court should not impose restrictions or guidelines which by their very nature must vary according to the circumstances. Fog which is present in one area may be absent a short distance away and variance of train speeds depending upon atmospheric conditions could conceivably cause more problems. Rigid time schedules require constant performance which must be maintained because of the public interest and as a public necessity for the movement of goods and people.
This train engineer did everything he was responsible to do. The train's speed of 30-35 m. p. h. was well below the posted limit of 50 m. p. h. The engineer sounded the train's horn and the crossing signals were functioning well in advance of reaching the intersection. We therefore reach the inescapable conclusion that the sole and proximate cause of this accident was the negligence of Transport's driver in failing to heed the various audio and visual warning signals and attempting to cross the train tracks. The holding of the district court is therefore patently erroneous, contrary to long established jurisprudence, and clearly constitutes manifest error.
Damages to the Railroad's engine were stipulated in the amount of $3,277.68.
The train engineer Treuil is entitled to recovery for his personal injuries. He saw Dr. Vincent Tumminello the day after the accident and was diagnosed with a contusion of the right knee and a strain of a joint on his right finger. Two months following the accident Treuil was examined at the request of Liberty and Dr. Claude Williams reported that the right knee was "mildly symptomatic". Over seven months after the accident Dr. Williams again examined Treuil who still complained of occasional pain. A subsequent examination by Dr. Stewart Phillips prior to trial revealed degenerative arthritis in both knees. Lost wages in the record amount to $3,200. Considering the type of impact Treuil experienced plus the nature and duration of his pain, we feel an award of $7,500 is appropriate, plus lost wages of $3,200.
Accordingly, that portion of the judgment appealed is reversed and set aside, and:
IT IS ORDERED that there be judgment in favor of Stephen D. Treuil and against Dealers Transport Company, Willie J. Braswell and Liberty Mutual Insurance Company, jointly, severally, and in solido, in the sum of Ten Thousand Seven Hundred Dollars ($10,700) with legal interest from date of judicial demand until paid;
*1308 IT IS FURTHER ORDERED that there be judgment in favor of Missouri Pacific Railroad Company and against Dealers Transport Company, Willie J. Braswell and Liberty Mutual Insurance Company, jointly, severally, and in solido, in the sum of Three Thousand Two Hundred Seventy-Seven Dollars Sixty Eight Cents ($3,277.68) with legal interest from date of judicial demand until paid and for all costs of these proceedings.
REVERSED AND RENDERED.
SCHOTT, J., concurs.
SCHOTT, Judge, concurring:
In his reasons for judgment the trial court concluded that the signals were working at this crossing and that the engineer Treuil was sounding his horn as he approached. However, the court concluded that Braswell was not able to see the lights flashing because of the fog but he could or should have heard the bell ringing from the signal and the horn of the engine. He properly concluded that Braswell was negligent in proceeding in disregard of these signals.
However, the court found that Treuil was negligent in maintaining a 30 to 35 mile per hour speed as he approached the crossing because this speed was "too high ... for the weather conditions that were involved herein."
All of the evidence shows that Braswell ran into the locomotive as it was crossing the road. For this reason I fail to see any relationship between Treuil's speed and the accident which would have taken place in the same way even if Treuil had been going five miles an hour. The train was there and Braswell ran into it. The speed of the train was not a causative factor and the accident was caused solely by the negligence of Braswell in proceeding across the tracks in utter disregard of the signals.
It is significant that Braswell admitted (Vol. II, Tr. 100) that he could see 20 or 25 feet ahead of him and that he was going between 5 and 7 miles per hour. Thus, by his own admission he should have seen the flasher lights from at least 25 feet, and this light was twelve and a half feet from the rail providing him with approximately 35 feet of distance in which to stop while proceeding at 5 to 7 miles per hour. He was also on notice of his proximity to the train tracks by virtue of another warning sign one-fifth of a mile away from the tracks. When these factors are considered it seems clear that Braswell's negligence was the sole cause of the accident and the speed of the train into which Braswell ran his truck had nothing to do with it from the standpoint of causation.
I concur in the award of $7500 in view of Dr. Phillips' testimony that Treuil sustained post traumatic condromalacia of the right knee and was left with a 10% permanent disability of that knee. Phillips testified that plaintiff would suffer discomfort and dysfunction of the knee on a permanent basis.