566 So.2d 1052 (1990)
Roger G. LEE, et al., Plaintiffs-Appellants,
v.
MISSOURI PACIFIC RAILROAD CO., et al., Defendants-Appellees.
No. 21613-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
Writ Denied November 26, 1990.
*1053 Davenport Files & Kelly by Thomas W. Davenport, Jr., Monroe, for plaintiffs-appellants.
Hudson, Potts & Bernstein by W. Craig Henry, William T. McNew, Monroe, for Missouri Pacific R. Co. and Donald R. Willard.
Hayes, Harkey, Smith, Cascio & Mullens by Thomas M. Hayes, III, Monroe, for Ouachita Parish Police Jury.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
HALL, Judge:
Plaintiffs, Roger Glen Lee and his parents, Edward and Norma Faye Lee, brought suit for damages against Missouri Pacific Railroad Company (MoPAC), Donald L. Willard (an engineer for Missouri Pacific), and the Ouachita Parish Police Jury. Roger Lee sought recovery for severe injuries sustained in a collision involving his automobile which he was driving and a Missouri Pacific train. The parents sought recovery for loss of society with their son and for other damages they had sustained as a result of the accident. After a bifurcated trial, the jury found that the railroad and its engineer were not negligent in causing the accident and the trial judge found likewise for the police jury. Plaintiffs appeal a judgment dismissing their action.

FACTS
In the early morning hours of June 16, 1984, Roger Lee and a guest passenger, Kenneth Bridges, were traveling north on Stubbs-Vincent Road in Lee's 1983 Toyota Celica. About four-tenths of a mile south of the intersection of Stubbs-Vincent Road and Louisiana Highway 139, the Missouri Pacific railroad track crosses Stubbs-Vincent Road. The train track makes a curve beginning near the Stubbs-Vincent crossing and continues through the crossing. The crossing cannot be seen by the train engineer until the train is approximately 600 feet from the crossing. However, the engineer begins sounding his horn and bell *1054 when the train is over 1,800 feet from the crossing.
As the Missouri Pacific train No. CKN114, a train over one mile in length which consisted of three engines, 111 coal cars and a caboose, "broke out of the curve," the engineer viewed the Stubbs-Vincent crossing. He noticed that Lee's vehicle was on the crossing and not moving. Willard testified that he began to sound his horn in short rapid blasts, but that the car remained stopped on the crossing. Willard threw the train into an emergency stop mode but could not even slow down before striking Lee's vehicle. During the 10 to 12 seconds that Willard could view Lee's automobile it did not move from its position on the crossing nor did the occupants attempt to abandon the automobile.
Lee and his passenger were seriously injured and neither have any recollection of the accident or events occurring immediately preceding the accident. All that is known about Lee's activities prior to this accident is provided by the testimony of Stephanie Swillie. She stated that she saw Roger Lee and Kenneth Bridges at the Hang Out in Monroe around 2:00 a.m. on June 16, 1984. She had never met Lee before this night, but had known Kenneth Bridges for a couple of years.
Lee and Bridges asked her if she wanted to go "riding around." They told her that they had marijuana and wanted to smoke it. Ms. Swillie testified that they all went to an isolated location on a dead-end road. There, the three of them shared a marijuana cigarette. They stayed about 10 or 15 minutes and returned to the Hang Out. She also testified that she could tell that Lee and Bridges had been drinking because of their slurred speech. However, she stated that Lee operated his vehicle normally.
When they had returned to the Hang Out, Ms. Swillie got out of the car and spoke with Lee a short time. She stated that Bridges was "passed out" in the passenger's seat. She asked Lee if he would like for someone to drive them home or have someone follow him, as she was concerned about his drinking. Lee said he was "O.K." She believed that they all left the Hang Out around 3:00 in the morning. There is no evidence establishing Lee's activities until the engineer spotted him on the grade crossing at 3:40 a.m.

CONTENTIONS OF THE PARTIES
Plaintiffs maintain that the railroad was negligent in operating its train at an excessive speed, failing to place proper warning signals at the crossing, failing to keep its right of way free from brush, and in maintaining a hazardous crossing. Against the police jury, plaintiffs assert that it failed to properly warn motorists of the railway, failed to place proper warning signals at the crossing, and that it failed to clear brush such that a motorist's view of the train would not be obscured.
Defendants contend that there was nothing they could do to avoid the accident. Lee was aware of the railroad crossing and for some unknown reason chose to stop his vehicle on the crossing. The vehicle did not appear to be stuck or disabled on the crossing and yet remained stationary in the face of an approaching locomotive. The occupants made no attempt to escape from the vehicle before impact. There was no evidence to establish how long the Lee vehicle had been stationary on the crossing, except for the engineer's testimony regarding the 10 to 12 seconds before impact.

OVERVIEW
At the outset, and without turning specifically to plaintiffs' assigned errors, we find it compelling to note that the plaintiffs bear the burden in this case, as in any tort litigation, of establishing that:
(1) The defendant's conduct contributed to or caused the plaintiff's harm;
(2) The defendant had a duty to refrain from conduct which caused the plaintiff's harm;
(3) The defendant negligently engaged in conduct which caused the plaintiff's harm; and
(4) The plaintiff has suffered damage as a result of the negligent conduct.

*1055 Thomas v. Missouri Pacific Railroad Company, 466 So.2d 1280 (La.1985); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
After a careful and thorough review of the record, we are convinced that plaintiffs have failed to show that any of the complained of actions or failures to act by the defendants in any way caused this accident. The uncontradicted evidence in this case is that Roger Lee, for some unknown reason, chose or happened to stop his vehicle directly in the middle of MoPAC's grade crossing at Stubbs-Vincent Road. In the face of an approaching locomotive, he did not attempt to remove his vehicle from the crossing nor himself from the vehicle. There was no obstruction preventing him from viewing the locomotive from the position at which he stopped. The engineer blew his horn repeatedly to no avail. The light of the engine shined directly onto Lee's automobile. Yet, Roger Lee did nothing.
Had additional bells or lights been erected at this crossing, there is no evidence that Roger Lee would not have been stopped on the crossing before they activated. Furthermore, no warning could have alerted Lee to any greater danger than the locomotive itself did as it approached him on this tragic morning. This evidence overwhelmingly convinces us that the sole cause of the accident was Lee's stopping his vehicle directly on the grade crossing, a violation of law. LSA-R.S. 32:171(B). Lee took no evasive action as the train approached him and by the time the engineer saw the stopped vehicle it was impossible to bring the more than one-mile-long train to a halt. We therefore are compelled to affirm the judgment of the trial court. That said, we now specifically address plaintiffs' assigned errors.

PREVIOUS ACCIDENTS
With this assignment of error, plaintiffs contend that the trial court erred in refusing to allow them to introduce evidence of three previous accidents involving automobiles and trains at this particular grade crossing. Defendants objected to the evidence on the grounds that it was irrelevant. The trial judge sustained the objection, noting that the plaintiffs had failed to show sufficient similarity between the previous accidents and this accident. Plaintiffs argue that the evidence was admissible to show that the crossing was dangerous and that the defendants had knowledge of that danger. As a proffer of evidence, plaintiff introduced the accident reports of the previous accidents.
The general rule with regard to the admissibility of evidence of prior accidents is that it is admissible for the limited purpose of showing that the defendant had notice of defects or physical conditions which are dangerous. Burk v. Illinois Central Gulf Railroad Company, 529 So.2d 515 (La.App. 1st Cir.1988). However, the parties seeking to introduce evidence of prior accidents must show that the prior accidents involve substantially the same circumstances or conditions which caused the accident at issue. Burk, supra; Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App. 1st Cir.1984); Keen v. Pel State Oil Company, Inc., 395 So.2d 866 (La.App. 2d Cir.1981); Wilson v. Aetna Casualty and Surety Company, 401 So.2d 500 (La.App. 2d Cir.1981).
The previous accidents occurred between the years of 1978 and 1982. In all other previous accidents moving vehicles collided with a train during daylight hours. They are similar to this accident only in that they occurred at the same intersection.
Plaintiffs attempt to show that all of the accidents, including this accident, are similar in that the motorist failed to see or notice the train. They reach this conclusion by arguing that it is presumed that Lee would not have intentionally placed himself in the position of peril and would have obeyed any signal to stop before the crossing, citing Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982); Watson v. Illinois Central Gulf Railroad, 355 So.2d 1366 (La.App. 1st Cir.1978); and Evans v. Chevron *1056 Oil Co., 438 F.Supp. 1097 (E.D.La. 1977). Therefore, plaintiffs would have us conclude that Lee must not have seen the train, just as the previous motorists had failed to do, since it is presumed that he would not place himself in eminent danger. Furthermore, they rely on Lee v. Missouri Pacific Railroad Company, 540 So.2d 287 (La.1989), for the proposition that the prior accidents need not be similar.
We cannot conclude that the trial court erred in excluding the evidence of prior accidents as irrelevant. In the Lee case, the court did not discuss an objection to evidence of the prior accidents. The court had allowed the evidence in Lee, which our Supreme Court used to sustain the finding of negligence on the DOTD. Lee does not control the question of admissibility of this evidence.
In this case, plaintiffs failed to show sufficient similarity between the previous accidents and this accident. The previous accidents involved moving vehicles colliding with moving trains. Rather than being a case in which the plaintiff failed to stop because of a failure to see the oncoming train, this case presents a situation in which the plaintiff did stop, but in a precarious location. The evidence in this case shows that Lee was stopped on the grade crossing directly in the path of the locomotive for 10 to 12 seconds. He remained on the track in the face of this danger without any noticeable effort to escape. Because of this failure to show similarity, the trial court did not err in refusing to admit this evidence as it was irrelevant.
Plaintiffs contend that the new Evidence Code does not mandate that previous accident evidence be similar in circumstance, citing LSA-C.E. Art. 404(B). While this particular article does not specifically mention similarity as a prerequisite to admissibility, we note that the jurisprudential similarity requirement goes to the relevancy test which is the fountainhead of admissible evidence.
For these reasons, the trial judge did not err in excluding the previous accidents evidence.

SETTLEMENT
Plaintiffs argue that the trial court erred in refusing to allow evidence of a settlement agreement between Kenneth Bridges and MoPAC. Bridges was called as a witness by MoPAC and plaintiffs contend that the settlement evidence was offered to show that the witness was biased.
MoPAC contends that the testimony was no different than the testimony Bridges gave in a deposition when he was an adverse party. Additionally, MoPAC points out that the testimony was no different than that of Lee himself and is therefore not biased. MoPAC asserts that the plaintiffs wanted the evidence before the jury solely to show liability.
The general rule is that evidence of a compromise to show liability on the compromisor is inadmissible for that purpose but the evidence is admissible for other purposes. Wells v. Allstate Insurance Company, 510 So.2d 763 (La.App. 1st Cir. 1987); Launey v. Thomas, 379 So.2d 27 (La.App. 3d Cir.1979). The policy behind this rule is that it encourages the resolution of disputes through compromise, which is favored by law. Broussard v. State Farm Mutual Automobile Insurance Company, 188 So.2d 111 (La.App. 3d Cir. 1966).
Plaintiffs sought to introduce the compromise by Kenneth Bridges, a witness called by defendant, to show bias. The new Evidence Code provides that compromise evidence can be introduced for this purpose. LSA-C.E. Art. 408.
In this case, the testimony of Kenneth Bridges was substantially the same as his testimony given in a deposition while adverse to the defendant. Further, his testimony which dealt primarily with his and Lee's use of alcohol and marijuana was corroborated by Lee himself. Therefore, we cannot say that the trial judge abused his sound discretion in refusing to admit the evidence of a compromise to show bias, since the testimony given by the witness was not contrary to plaintiffs' evidence and is not attacked as being inaccurate or untrue. *1057 Any error in this regard was harmless.

EVIDENCE OF INTOXICATION
Relying primarily on State v. Rowell, 517 So.2d 799 (La.1988), plaintiffs contend that the trial judge erred in admitting into evidence a blood alcohol test showing that Lee had a blood alcohol content of .08 one hour and 30 minutes after the accident. We see no error in the introduction of this evidence.
It has long been established that while the presumption of intoxication found in LSA-R.S. 32:662 is inapplicable to a civil proceeding, this statute in no way prevents a civil litigant from introducing into evidence a person's blood alcohol content and testimony of competent expert witnesses to interpret the effects of such a level on a person's ability to operate a motor vehicle. Parker v. Kroger's, Inc., 394 So.2d 1178 (La.1981); Bufkin v. Mid-American Indemnity Company, 528 So.2d 589 (La.App. 2d Cir.1988); Whittington v. American Oil Company (Amoco), 474 So.2d 41 (La. App. 4th Cir.1985); Champagne v. McDonald, 355 So.2d 1335 (La.App. 3d Cir. 1978).
Plaintiffs, however, argue that the evidence should have been excluded because defendant failed to show that the blood test was reliable. They assert that the court in State v. Rowell, supra, found that the test used in this case, the B-D Blood Alcohol Kit No. 4990, was unreliable, and therefore evidence derived from the test inadmissible.
Since Rowell, the Supreme Court has stated that the scope of Rowell is limited only to a situation in which the state attempts to rely on the statutory presumption of LSA-R.S. 32:662. State v. Honeyman, 560 So.2d 825 (La.1990); State v. McElroy, 553 So.2d 456 (La.1989). Since the presumption of intoxication is not applicable in a civil proceeding, it logically follows that the Rowell decision is likewise not controlling.
Accordingly, before blood alcohol tests can be admitted in a civil proceeding, the party seeking to introduce the evidence must lay a proper foundation, i.e. show a connection between the specimen and source, show that the specimen is properly labeled and preserved, properly transported for analysis, properly taken by an authorized person, and properly tested. Bufkin, supra; Lawless v. New Orleans Police Department, 550 So.2d 252 (La.App. 4th Cir. 1989).
The trial court did not err in admitting the results of the blood alcohol test into evidence because defendant was able to lay a proper foundation. Lee's blood was drawn by Carl Benjamin Shockley, an employee of the North Louisiana Crime Lab and a registered nurse. The blood was taken from the inside elbow region of Lee's arm at 5:10 a.m. on June 16, 1984. Mr. Shockley stated that he used a new unopened B-D 4990 kit in withdrawing the sample. The tube was sealed and properly labeled before Mr. Shockley personally transported it to the parish jail, where it was placed in a locked box.
Plaintiffs complain that Mr. Shockley did not ask other medical personnel present whether they had rubbed the sample area of Lee's arm with alcohol before the blood was withdrawn. Shockley stated that he did not remember any IV's being present in the region from where the blood was taken. This one factor that someone may have rubbed alcohol on the region at which the blood was withdrawn, does not destroy the reliability of the blood test.
Defendants also called Linda Armstrong, another employee of the North Louisiana Criminal Lab, who tested the blood sample submitted on Lee. She picked up the blood sample from the locked box at the parish jail and she delivered it to the laboratory for examination.
She tested the sample in a gas chromatograph machine, which she had verified was working accurately by running known blood samples through the machine. There was no question that Ms. Armstrong was qualified to run the gas chromatograph. She had run the machine for several years and was certified as an operator of the machine after certification became necessary. *1058 She testified that she did not have to learn any new skills or procedures to become certified in operating the machine.
After a foundation for the introduction of the blood test was established before the trial judge, plaintiffs chose to stipulate to Lee's blood alcohol content rather than have the witnesses appear before the jury. They stipulated that the test revealed Lee's alcohol content to be .08. As stated previously, we cannot conclude that the trial judge erred in admitting the test result.

JURY INSTRUCTIONS
Plaintiffs contend that the trial judge erred by instructing the jury that the railroad had no duty to operate its train at a speed in which it could be stopped within the engineer's field of vision in a rural area. They contend that the instruction, while legally correct, takes the issue of whether the area was rural away from the jury, because the judge did not qualify the instruction with a statement that the question of whether the area was rural was up to the jury. After reviewing the record, we do not find that the plaintiffs made an objection to the jury instruction before the jury retired or immediately thereafter. Therefore, they waived any objection to the jury instruction. LSA-C.C.P. Art. 1793; Kaplan v. Missouri-Pacific Railroad Company, 409 So.2d 298 (La.App. 3d Cir. 1981).
Furthermore, the instruction given by the trial court was a proper statement of the law and did not take a factual question away from the jury. In other instructions given to the jury, the trial judge informed them that they were the sole judges of the facts of the case. There was ample evidence regarding the nature of the area for the jury to have concluded that the area was rural. The trial judge did not need to qualify the instruction by stating that the question of whether the area was rural was in the jury's discretion since they already knew that they were the finders of fact.

NEGLIGENCE OF DEFENDANTS
Again, in addressing these assignments of error, we find it compelling to ask whether it can be said that any of the alleged acts of negligence caused this tragic accident.
First, the plaintiffs allege that the train was traveling at an excessive rate of speed and that the engineer failed to sound his horn. Plaintiffs were unable to establish that the engineer failed to sound the horn. The testimony of the train crew was to the contrary. Typically, a railroad's self-imposed speed regulation, though not conclusive, is to be considered as evidence of the maximum safe speed in the area where an accident occurs. Thomas v. Missouri Pacific Railroad Co., supra, at p. 1286. The railroad company established that it was not traveling in excess of the company's self-imposed speed limit of 40 miles per hour which was 19 miles per hour below the federal speed limit in this area. A railroad does not have a duty to operate its train in a rural area at such a reduced speed that it can be stopped within the train crew's range of vision, in this case approximately 600 feet. Buchholz v. Dealers Transport Co., 399 So.2d 1303 (La.App. 4th Cir.1981); Theriot v. Texas and New Orleans Railroad Co., 220 So.2d 563 (La. App. 4th Cir.1969); Homeland Ins. Co. v. Thompson, 12 So.2d 62 (La.App. 1st Cir. 1943); Jeter v. Texas & P. Ry. Co., 149 So. 144 (La.App. 2d Cir.1933). Therefore, the jury could have reasonably concluded that the railroad was not negligent in speeding or in failing to sound its horn.
Next, the plaintiffs were not able to establish that there was a defect at this crossing which prevented Lee from crossing the track. There was no evidence indicating that Lee's car was lodged or stuck on the grade crossing. Simply, the record reveals no explanation of why Lee's vehicle was stopped on the grade crossing.
Finally, and most troublesome, plaintiffs were able to establish that this particular crossing was marked only by the minimum legal requirement, a cross-buck sign. However, the evidence does not establish that any additional warning would have *1059 prevented this accident. There is no evidence showing the exact amount of time Lee had been stopped on the railroad track. We choose not to presume that Lee would have obeyed a more prominent warning because we do not know if the warning would have been activated by the approaching train before he stopped his vehicle on the grade crossing. Also, there were no obstructions preventing Lee from seeing the train as it approached him and blew its whistle.
Both Lee and his guest passenger drank alcohol and smoked marijuana shortly before the accident. This fact may have contributed to Lee's stopping on the track and his failure to avoid the accident for the 10 to 12 seconds that the train was clearly in view. Certainly, the judge and jury were correct in considering this evidence as a substantial cause of Lee's conduct.
For all of these reasons, we cannot say that the trial judge or the jury erred in concluding that the defendants were not negligent in causing this accident. The judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.